1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAURA ESQUER, | Case No. 19-CV-05933-LHK |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE** |
| v. | Re: Dkt. No. 20 |
| STOCKX, LLC, | |
| Defendant. | |

Defendant StockX, LLC brings a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). ECF No. 20. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's motion.

## I.      BACKGROUND

### A. Factual Background

Plaintiff Laura Esquer is a resident of San Jose, California and brings this action on behalf of herself and a putative class of California residents (collectively, "Plaintiffs"). ECF No. 1 ("Compl.") ¶¶ 17, 66. Defendant StockX, LLC is a Michigan limited liability company with its principal place of business in Detroit, Michigan. *Id.* ¶ 26.

Defendant operates a website that allows users to buy and sell "like-new merchandise." *Id.*

1

United States District Court
Northern District of California

¶ 26. On July 26, 2019, Defendant purportedly discovered a breach of 6.8 million customer records from Defendant's website. *Id.* ¶ 49. The breach was reported in the media in August 2019. *Id.* ¶¶ 2, 4–5, 52. Plaintiff Esquer created an account with Defendant in early to mid-2019 and alleges that her information was stolen in the data breach. *Id.* ¶¶ 18-20.

Plaintiffs contend that Defendant knew about the breach but informed its users to change their passwords because of "system updates." *Id.* ¶¶ 3, 51. Plaintiffs claim that Defendant failed to take adequate data-security measures and to detect and respond to the breach. *Id.* ¶¶ 6–9. Plaintiffs also allege that Defendant failed to follow data-security guidance from the Federal Trade Commission ("FTC"). *Id.* ¶¶ 46–48. As a result, Plaintiffs state that the proposed class has suffered or will likely suffer injuries including unauthorized charges, theft of personal information, time and effort to regain access to accounts and correct records, and diminution in the value of their personal data. *Id.* ¶ 10.

### B. Procedural History

Plaintiff Esquer filed the instant putative class action on September 23, 2019, on behalf of herself and a proposed class comprising "all citizens of California whose Customer Data was stolen from StockX during the Data Breach." *Id.* ¶ 66. Plaintiffs bring three claims: (1) a claim under California Civil Code § 1798.81.5 for failure to maintain "reasonable security" of personal information; (2) a claim under the Declaratory Judgment Act, 28 U.S.C. § 2207, for a declaratory judgment; and (3) a claim under the California Unfair Competition Law, Cal. Civ. Code §§ 15200 *et seq.*, premised on violations of California Civil Code section 1798.81.5 and the Federal Trade Commission Act. *Id.* ¶¶ 78–104. Plaintiffs seek declaratory and injunctive relief, as well as attorney's fees and costs. *Id.* at 23–24.

In addition to the instant case, five other putative class actions have been filed in federal court, four of which were filed prior to this case: three in the Eastern District of Michigan, one in the Eastern District of Pennsylvania, and one in the Southern District of Florida.[1] ECF No. 20

---

[1] The five class actions are No. 1:19-cv-23285-UU, ECF No. 1 (S.D. Fla. Filed Aug. 6, 2019); *McBride v. StockX, L.L.C.*, No. 2:19-cv-03685-PBT (E.D. Pa. filed Aug. 15, 2019); *I.C. ex rel.*

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1    ("Mot.") at 1, 6–8; ECF No. 20-1 ("Rollins Decl.") ¶¶ 2–7.  Although Defendant sought

2    multidistrict litigation ("MDL") consolidation, on December 18, 2019, the United States Judicial

3    Panel on Multidistrict Litigation denied Defendant's request to consolidate litigation in the Eastern

4    District of Michigan.  *In re StockX Customer Data Security Breach Litig.*, 412 F. Supp. 3d 1363,

5    1364 (J.P.M.L 2019).  On January 13, 2020, the parties to the Southern District of Florida case

6    stipulated to transfer venue to the Eastern District of Michigan. Mot. at 7; Rollins Decl. ¶ 3.  On

7    March 2, 2020, the four cases in the Eastern District of Michigan were consolidated before Judge

8    Victoria Roberts.  Reply at 1.  Defendant has also moved to transfer the Eastern District of

9    Pennsylvania action to the Eastern District of Michigan; that motion remains pending as of the

10   date of this Order.  *See McBride v. StockX, LLC*, No. 2:19-cv-03685-PBT (E.D. Pa May 6, 2020),

11   ECF No. 12.

12           On January 24, 2020, Defendant moved to transfer the instant case to the Eastern District

13   of Michigan.  *See* Mot.  Plaintiffs opposed on February 21, 2020.  *See* ECF 26-3 ("Opp'n").

14   Defendant filed its reply on March 9, 2020.  *See* ECF 30-3 ("Reply").

15   **II.    LEGAL STANDARD**

16           A motion to transfer venue from one district to another is governed by 28 U.S.C.

17   § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a

18   district court may transfer any civil action to any other district or division where it might have

19   been brought." 28 U.S.C. § 1404(a).  Generally, the party seeking transfer bears the burden of

20   showing that transfer is appropriate.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir.

21   2000).

22           Under the plain text of the statute, the moving party must make two showings in order to

23   justify transfer.  First, the transferee forum must be one in which the case "might have been

24   brought."  *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).  "In determining whether an action 'might

25   

26   *Chaudhri, et al. v. StockX, Inc.*, No. 2:19-cv-12441-VAR-EAS (E.D. Mich. filed Aug. 19, 2019);
     *M.S. ex rel. Shakarchi v. StockX, Inc.*, No. 2:19-cv-12761-BAF-MJH (E.D. Mich. filed Sept. 20,
27   2019); and *Harrington v. StockX, Inc.*, No. 2:19-cv-13704-BAF-EAS (E.D. Mich. filed Dec. 17,
     2019).

28
     Case No. 19-CV-05933-LHK
     ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1 have been brought' in a district, the court looks to whether the action initially could have been

2 commenced in that district." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

3 Second, provided the case could have been brought in the proposed transferee forum, the movant

4 must persuade the court that considerations of "convenience of parties and witnesses" and "the

5 interest of justice" weigh in favor of transfer. *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110,

6 1117 (N.D. Cal. 2014). The Ninth Circuit has identified a number of specific but non-exhaustive

7 factors which "the court may consider" in analyzing those overarching statutory considerations:

8 "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is

9 most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

10 contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

11 forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

12 compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of

13 access to sources of proof," (9) "the presence of a forum selection clause," if any; and (10) "the

14 relevant public policy of the forum state, if any." *Jones*, 211 F.3d at 498–99.

15 A district court is not restricted to the pleadings on a motion transfer and may consider,

16 *inter alia*, "undisputed facts supported by affidavits, depositions, stipulations, or other relevant

17 documents." *FastCap, LLC v. Snake River Tool Co., LLC*, No. 15-CV-02764-JSC, 2015 WL

18 6828196, at *2 (N.D. Cal. Nov. 6, 2015). Section 1404(a) affords the court significant discretion

19 to transfer the case based on an "individualized, case-by-case consideration of convenience and

20 fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376

21 U.S. 612, 622 (1964)).

22 **III. DISCUSSION**

23 In the instant motion, Defendant seeks to transfer this case to the Eastern District of

24 Michigan. As set forth below, the Court finds that this case "might have been brought" in the

25 Eastern District of Michigan and that the convenience of the parties and the interests of justice

26 favor transfer.

27 **A. The Instant Case Might Have Been Brought in the Eastern District of Michigan**

28

4

1      The first requirement for transfer, as set forth in 28 U.S.C. § 1404, is that the transferee

2  forum must be one in which the case "might have been brought." *Hoffman*, 363 U.S. at 344.  An

3  action might have been brought in a district court if "(1) [the district court] has subject matter

4  jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would

5  have been proper." *Duffy v. Facebook, Inc.*, No. 16-CV-06764-JSC, 2017 WL 1739109, at *3

6  (N.D. Cal. May 4, 2017).

7      Plaintiffs and Defendant agree that the instant action could have been brought in the

8  Eastern District of Michigan.  Opp'n at 6 ("Plaintiff does not dispute that this case could have

9  been brought in the Eastern District of Michigan.");  Mot. at 10–11.  The Court agrees and

10  addresses in turn each of the three elements: (1) subject matter jurisdiction, (2) personal

11  jurisdiction, and (3) venue.

12      As to the first element, the Court agrees that the Eastern District of Michigan would have

13  subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The

14  Class Action Fairness Act vests federal courts with original jurisdiction over class actions that

15  meet the following prerequisites: (1) "the matter in controversy exceeds the sum or value of

16  $5,000,000, exclusive of interest and costs"; (2) the parties meet minimal requirements for

17  diversity such that "any member of a class of plaintiffs is a citizen of a State different from any

18  defendant"; and (3) the class equals to or exceeds 100 individuals in the aggregate.  28 U.S.C.

19  § 1332(d).  Those requirements are satisfied here.  First, Plaintiffs allege that the amount in

20  controversy "exceeds $5 million exclusive of interest and costs."  Compl. ¶ 14.  Second, the

21  number of members of the proposed class is greater than 100.  *Id.*  Third, at least one class

22  member is a citizen of a different state from Defendant: Plaintiff Esquer is a citizen of California,

23  *id.* ¶ 17, whereas Defendant is a Michigan limited liability company with its principal place of

24  business in Michigan, *id.* ¶ 26; Rollins Decl. ¶ 11.  Accordingly, the Eastern District of Michigan

25  would have subject matter jurisdiction under the Class Action Fairness Act.

26      As to the second element, Defendant StockX, LLC would be subject to personal

27  jurisdiction in Michigan as a Michigan limited liability corporation with its principal place of

28

5

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1   business in Michigan, as set forth above.

2        As to the third element, venue would be proper in the Eastern District of Michigan.  The

3   venue statute, 28 U.S.C. § 1391, provides that a civil action may be brought in a "judicial district

4   in which any defendant resides, if all defendants are residents of the State in which the district is

5   located."  The sole defendant in this case, StockX, LLC, is a resident of Detroit, which lies within

6   the Eastern District of Michigan.  Rollins Decl. ¶ 11.

7        In sum, the Eastern District of Michigan would have had both subject matter jurisdiction

8   and personal jurisdiction, and venue would have been appropriate there. The Court thus concludes

9   that the instant case "might have been brought" in the Eastern District of Michigan.  *See* 28 U.S.C.

10  § 1404(a).

11  **B.  Convenience and the Interest of Justice Favor Transfer**

12       The Court now turns to the second requirement for transfer: that considerations of

13  "convenience of parties and witnesses" and "the interest of justice" weigh in favor of transfer.

14  Below, the Court analyzes these statutory factors as well as other considerations that the parties

15  have raised.  The Court ultimately finds that Defendants have met their burden of justifying

16  transfer from this court to the Eastern District of Michigan.

17      **1.  Convenience Factors**

18       Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to

19  prove equally convenient or inconvenient."  *Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571-

20  JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (quoting *Van Dusen*, 376 U.S. at 646).

21  Thus, transfer "should not be granted if the effect is simply to shift the inconvenience to the

22  plaintiff."  *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co*, 805 F.2d 834, 843 (9th Cir.

23  1986)).  The Court considers Plaintiffs' choice of forum, the convenience to parties and witnesses,

24  and the access to sources of proof.

25      **a.  Plaintiffs' Choice of Forum**

26       The parties dispute how much deference is due to Plaintiffs' choice of forum.  Generally, a

27  defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's

28

1    choice of forum." *Decker Coal*, 805 F.2d at 843.  In the case of a class action, however, a

2    plaintiff's choice is given less weight when there are not significant contacts between the forum

3    and the allegations of the complaint.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

4    Nonetheless, even in a class action, "[i]n judging the weight to be accorded [plaintiff's] choice of

5    forum, consideration must be given to the extent of both [plaintiff's] and the [defendants']

6    contacts with the forum, including those relating to [plaintiff's] cause of action."  *Id.* at 739.

7    Where "there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and

8    defendant have significant contacts with the Northern District of California, plaintiffs' choice of

9    forum carries significant weight."  *Roling v. E*Trade Sec., LLC,* 756 F. Supp. 2d 1179, 1186

10   (N.D. Cal. 2010).

11          Here, Plaintiff Esquer is a resident of this forum, where she signed up for Defendant's

12   service.  Compl. ¶¶ 16, 17.  She seeks to represent a California class.  *Id.* ¶ 66.  In addition,

13   Plaintiffs argue that Defendant has "significant contacts dedicated toward data security in this

14   District" because Defendant utilized "third-party data incident and forensic experts" located in

15   California in order to investigate the data breach.  Opp'n at 7.  On the other hand, Defendant,

16   including its servers, data centers, and employees, are all located in Michigan.  Rollins Decl. ¶ 16.

17   Under these facts, the Court agrees that Plaintiffs' choice of forum is entitled to at least some

18   weight.  *See, e.g.*, *Doe v. Epic Games, Inc.*, No. 19-cv-03629-YGR, 2020 WL 376573, at *8 (N.D.

19   Cal. Jan. 23, 2020) (giving "at least some deference" to plaintiff's choice of forum when plaintiff

20   sought to represent a nationwide class and a California subclass after downloading a videogame in

21   the chosen forum).

22          Defendant cites a case from this Court to argue that Plaintiffs' choice of forum does not

23   warrant much weight in this situation.  Mot. at 16–17 (citing *Park v. Dole Fresh Vegetables, Inc.*,

24   964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013)).  However, Defendant's reliance on *Park* is

25   misplaced.  In *Park*, the Court assigned "less deference than is generally given" to the plaintiff's

26   choice of forum because the plaintiff was not a resident of the forum; the conduct giving rise to the

27   claim occurred in another forum; the plaintiff sued on behalf of a nationwide, rather than a state-

28

*United States District Court*
*Northern District of California*

7

1    only, class; and the plaintiff had originally filed in a different forum. 964 F. Supp. 2d at 1094–95.

2    Those facts are all distinguishable from the instant case. Thus, *Park* is inapposite.

3        In sum, the Court finds that Plaintiffs' choice of this forum is due "at least some

4    deference," and this factor weighs against transfer. *See Epic Games*, 2020 WL 376573, at *8.

5        **b. Convenience of Parties and Witnesses**

6        To evaluate convenience to witnesses, "courts must consider not only the number of

7    witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster*

8    *v. Broker Sols., Inc.*, No. 17-CV-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019)

9    (citation omitted). Further, "courts generally give less consideration to the convenience of party

10   witnesses or witnesses employed by a party because these witnesses can be compelled by the

11   parties to testify regardless of where the litigation will occur." *Epic Games*, 2020 WL 376573, at

12   *8. Because the convenience of non-party witnesses is generally given greater weight, the Court

13   considers first non-party witnesses and then parties and party witnesses.

14       The only potential non-party witnesses explicitly identified by either side are Defendant's

15   security consultants, who Plaintiffs argue reside in this District. Opp'n at 9–10. However,

16   Defendant disputes that they are "key non-party witnesses," because they were only retained by

17   Defendant's counsel for purposes of the litigation. Reply at 5. Moreover, Defendant argues that

18   their testimony would not be discoverable as such testimony would likely be protected under the

19   attorney-client privilege or the attorney work product doctrine. *Id.*

20       The Court declines to wade unnecessarily into any discovery dispute. However, Defendant

21   bears the burden of showing that transfer is appropriate. *Jones*, 211 F. 3d at 499. In this instance,

22   Defendant has not shown that the investigation of security consultants hired by Defendant to

23   investigate the data breach is not relevant to Plaintiffs' claims that Defendant failed to adequately

24   prevent the data breach. Based on the record before the Court, the Court finds that the

25   convenience of these non-party witnesses weighs against transfer.

26       Defendant also mentions, without providing further detail, that there are "former StockX

27   employees in the Detroit metropolitan area" who are potential non-party witnesses. To justify

28

United States District Court
Northern District of California

8

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

1   transfer, the burden rests on the moving party to "name the witnesses, state their location, and

2   explain their testimony and its relevance." *Hendricks v. StarKist Co.*, No. 13-cv-729-YGR, 2014

3   WL 1245880, at *3 (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d

4   1183, 1193 (S.D. Cal. 2007)).  Accordingly, the Court does not consider these unnamed, non-party

5   witnesses for Defendant.  In sum, the convenience of non-party witnesses weighs against transfer.

6          As for the parties and party witnesses, the Court finds that transfer will substantially

7   enhance the convenience of litigation.  Plaintiff Esquer resides in California, Compl. ¶ 17, and

8   thus she will suffer a greater burden traveling to trial in Detroit than remaining in San Jose.  On

9   the other hand, Defendant identifies at least six Detroit-based employees as potential witnesses

10  and argues that the greater number weighs in favor of transfer.  Reply at 4–5.

11         Moreover, the unique circumstances of a pending, consolidated case in the transferee court

12  provide further significant convenience and efficiency, which weighs heavily in favor of transfer.

13  Transferring this case would allow Plaintiffs' counsel to share the burden of discovery, and, if the

14  case is consolidated with the other four cases, transfer would likely obviate much of the need for

15  Plaintiff Esquer to travel.  Transfer would also greatly limit the travel and litigation costs for

16  Defendant.  Therefore, the convenience to the parties weighs strongly in favor of transfer.  *See*

17  *Schwartz v. Frito-Lay N. Am., Inc.*, No. C-12-02740(EDL), 2012 WL 8147135, at *5 (N.D. Cal.

18  Sept. 12, 2012) (finding that the "inconvenience to Defendant of having to litigate the same issues

19  in multiple courts" outweighed the inconvenience to the plaintiff of traveling to another court to

20  give evidence).

21         When the Court considers the convenience to non-party witnesses together with the

22  convenience to the parties and party witnesses, the Court finds this factor weighs in favor of

23  transfer.

24              **c.  Ease of Access to Evidence**

25         Defendant argues that because evidence, in the form of "StockX's computer systems and

26  company records" is located at the company's headquarters in Michigan, this factor weighs in

27  favor of transfer.  Mot. at 14.

28

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    As an initial matter, both parties agree that records are likely to be produced electronically.

2  *Id.*; Opp'n at 11.  Generally, "in this type of case where electronic discovery is the norm (both for

3  electronic information and digitized paper documents), ease of access is neutral given the

4  portability of the information." *Lax*, 65 F. Supp. 3d at 780.  Plaintiffs thus argue that technological

5  advances in the ease of producing documents mitigate any advantage to a particular forum.  Opp'n

6  at 11.  Nevertheless, Defendant cites a recent, factually analogous case that involved a "high-level

7  breach of corporate systems and attendant relevant corporate policies and practices," in which

8  transfer was granted because the records at the defendant's headquarters might be "difficult or

9  expensive to duplicate or transfer."  *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 879 (M.D. Tenn.

10  2019).  Although the instant case presents a factually similar scenario, where Defendant alleges

11  some information relevant to the data breach may be difficult or expensive to duplicate or transfer

12  from Defendant's headquarters in Michigan, the Court assumes that the vast majority of the

13  documents will likely be electronically producible.  *See Joubert v. Lienhard*, No. 19-CV-02651-

14  LHK, 2020 WL 1233938, at *5 (N.D. Cal. Mar. 13, 2020). (finding that "speculative, unidentified

15  costs" of data production did not weigh in favor of transfer "particularly given the advancements

16  in electronic discovery").  Accordingly, the Court finds that this factor is neutral.

17    **2.  The Interest of Justice**

18    The Court next considers the "interest of justice."  Courts have interpreted the "interest of

19  justice" to encompass various "public factors."  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

20  241 (1981).  In the instant case, the parties have raised four such factors: the local interest in the

21  controversy, familiarity with governing law, judicial economy, and court congestion.  Here, the

22  Court finds that the interest of justice greatly favors transfer, and the Court addresses each of these

23  factors in turn.

24    **a.  Local Interest in the Controversy**

25    The Court first considers the "local interest in having localized controversies decided at

26  home."  *Decker Coal*, 805 F.2d at 843 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6.  Both

27  California, where Plaintiff Esquer and the putative California class members reside, and Michigan,

28

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

1    where Defendant is headquartered, have a local interest in this litigation.  Courts in this district,

2    when "considering a similar split of interests between fora[,] have concluded that this factor is

3    neutral."  *Olosoni v. HRB Tax Group, Inc.*, No, 19-cv-03610-SK, 2019 WL 7576681, at *5 (N.D.

4    Cal. Nov. 27, 2019) (collecting cases).  Similarly, the Court begins from a presumption that this

5    factor is neutral.

6         Plaintiffs contend that California's interest is greater because this action is filed under

7    California law on behalf of a California class, and seeks to protect the California public.  Opp'n at

8    14 (citing *Imran v. Vital Pharmaceuticals, Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *6

9    (N.D. Cal. Apr. 5, 2019)).  In *Imran*, the court found that California's interest in protecting its

10   citizens from improper business practices outweighed the interest of Florida, where the defendant

11   company was headquartered and where other two other class actions were pending.  2019 WL

12   1509180, at *6.   The *Imran* court noted in its analysis that the plaintiffs had brought claims under

13   California law on behalf of a putative class of California consumers, in addition to claims under

14   New York law.  *Id.* at *1, 6.

15        The instant case bears a strong resemblance to *Imran*.  Plaintiffs bring a claim for

16   declaratory judgment under federal law; a California unfair competition claim based on violations

17   of state law and the Federal Trade Commission Act; and a California statutory claim for failure to

18   maintain reasonable security of personal information.  Compl. ¶¶ 13, 66, 78–84, 96–104; Opp'n at

19   14.  Defendant argues that litigation concerning the data breach has been initiated nationwide and

20   asserts federal claims and claims based on the laws of other states, which limits California's

21   interests.  Reply at 8.  However, the *Imran* court likewise considered California's interest to be

22   significant for a California-only class bringing claims predominantly under California law, even

23   when five class-action lawsuits were pending in three other different federal districts.  *Imran*, 2019

24   WL 1509180 at *1, 6.

25        Accordingly, the Court finds that this factor weighs slightly against transfer.[2]

26

27   _____

     [2] The other two cases Plaintiffs cite as justification for California's interest in enforcing its laws
28   are inapposite because they seek to resolve conflict of law issues rather than venue.  Opp'n at 14.

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

1

### b. Familiarity with Governing Law

2      Plaintiffs raise claims under both California law and federal law, and Plaintiffs seek to

3  certify a class under Federal Rule of Civil Procedure 23.

4      For issues of federal law, federal district courts are "presumed to be equally familiar with

5  the applicable statutes." *Desert Survivors v. U.S. Dep't of the Interior*, No. 16-CV-01165-JCS,

6  2016 WL 3844332, at *4 (N.D. Cal. July 15, 2016). Therefore, federal law issues are neutral with

7  regard to transfer.

8      For issues of California law, Plaintiffs assert that judges in this District are more familiar

9  with California consumer protection laws than judges in Eastern District of Michigan. Opp'n at

10 14. However, "courts outside of California are fully capable of applying California law." *Roling*,

11 756 F. Supp. 2d at 1186. Indeed, the consolidated case in the Eastern District of Michigan already

12 includes claims under California law. Consolidated Class Action Complaint, *In re StockX*

13 *Consumer Data Security Breach Litig.*, No. 2:19-cv-12441-VAR-EAS (E.D. Mich. May 11,

14 2020), ECF No. 24 ("Consol. Compl."), at ¶¶ 209, 226. Plaintiffs further argue that novel issues

15 of state law may arise in the event that Defendant moves to compel arbitration. Opp'n at 14–15.

16 The Court need not take into account Plaintiffs' speculation regarding arbitration when Defendant

17 has not in fact moved to compel arbitration in any of the six cases currently pending that have

18 arisen from the instant data breach.

19      In sum, the Court finds this factor to be neutral.

20      ### c. Judicial Economy

21      The Court finds that the most dispositive consideration in this case is judicial economy.

22  _____

23  In *Eiess v. USAA Federal Savings Bank*, the court held that California rather than Texas law should govern a claim because Texas law ran counter to a fundamental California policy that

24  renders unenforceable a waiver of a claim for public injunctive relief. 404 F. Supp. 3d 1240, 1257–60 (N.D. Cal. 2019). In *Walter v. Hughes Communications, Inc.*, the court found that the

25  ability to seek punitive damages and injunctive relief under consumer protection laws meant that California had a stronger interest than Maryland in having its laws apply. 682 F. Supp. 2d 1031,

26  1042 (N.D. Cal. 2010). By contrast, in the instant case, the parties are not contesting the application of California law, and transfer would not affect the conflict of laws analysis. *See*

27  *Ferens v. John Deere Co.*, 494 U.S. 516, 522–23 (1990) (quoting *Van Dusen*, 376 U.S. at 635–637).

28

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

*United States District Court*
*Northern District of California*

1   Specifically, Defendant argues that four other cases arising from the same data breach have been

2   consolidated in the Eastern District of Michigan, and transfer would "eliminate the risk of

3   inconsistent rulings, conserve judicial resources, reduce litigation costs," and ensure that all the

4   actions are "coordinated and subject to the same discovery and pleading timetables." Mot. at 19;

5   Reply at 8. "The feasibility of consolidation is a significant factor in a transfer decision, although

6   even the pendency of an action in another district is important because of the positive effects it

7   might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J.*

8   *Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.,* 503 F.2d 384, 386–87 (9th Cir.1974)

9   (internal citations omitted).

10          Judicial economy is served when courts transfer an action to a venue where other actions

11  based on similar facts and allegations have already been consolidated. For example, a court in this

12  District granted transfer to the Eastern District of New York where three other class actions with

13  similar allegations had been consolidated. *Schwartz*, 2012 WL 8147135, at *1. The consolidated

14  case in New York brought California law claims, had California plaintiffs, and proposed a

15  California subclass. *Id.* Correspondingly the court found that consolidation would be feasible. *Id.*

16  at *5. Similarly, in *Hawkins v. Gerber Products Co.*, the Southern District of California granted

17  transfer of a false advertising class action to the District of New Jersey, where five other actions

18  had been consolidated. 924 F. Supp. 3d 1208, 1211–12 (S.D. Cal. 2013). The court found that

19  transfer would "serve the interest of justice due to the possible consolidation of discovery and the

20  conservation of time, energy and money, and the avoidance of the possibility of inconsistent

21  judgments." *Id.* at 1214.

22          Here, the four cases in the Eastern District of Michigan have already been consolidated.

23  Reply at 1. The consolidated complaint brings California law claims on behalf of a California

24  plaintiff and putative California subclasses. Consol. Compl. ¶¶ 24–31 (discussing California

25  plaintiff); ¶ 131(i)–(j) (defining California subclasses); ¶¶ 209, 226 (asserting California law

26  claims). Because it is likely that the instant case could be consolidated as well, the Court agrees

27  that principles of judicial economy strongly favor transfer.

28

*United States District Court*
*Northern District of California*

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

United States District Court
Northern District of California

1   The "first-to-file" rule provides an additional justification for transferring the instant case

2   under principles of judicial economy.  Under this rule, "when cases involving the same parties and

3   issues have been filed in two different districts, the second district court has discretion to transfer,

4   stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai*

5   *Medical Center v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1991).  The first-to-file rule "serves the

6   purpose of promoting efficiency well and should not be disregarded lightly." *Goldfield Corp. v.*

7   *Hartford Acc. & Indem. Co.*, No. 14-CV-0134-TOR, 2014 WL 4060317, at *3 (E.D. Wash. Aug.

8   15, 2014) (quoting *Church of Scientology of California v. U.S. Dept. of Army*, 611 F.2d 738, 750

9   (9th Cir. 1979), *overruled on other ground by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th

10  Cir. 2016)).  The rule "is primarily meant to alleviate the burden placed on the federal judiciary by

11  duplicative litigation and to prevent the possibility of conflicting judgments." *Id.*  Here, the first

12  consumer class action arising from the StockX data breach was filed in the Southern District of

13  Florida on August 6, 2019 and has now been consolidated in the Eastern District of Michigan.  *See*

14  Class Action Complaint, *Casey v. StockX, LLC*, No. 1:19-cv-23285-UU, ECF No. 1 (S.D. Fla.

15  Aug. 6, 2019); Rollins Decl. ¶ 3; Reply at 1.  The instant suit and the first-filed suit, which has

16  now been consolidated, both involve substantially similar claims and involve the same parties.

17  Although neither party raised this rule, the rule provides a similar rationale militating in favor of

18  transfer on principles of comity and judicial efficiency.

19   To get around this result, Plaintiffs argue that consolidation of the instant case with the

20  consolidated action in the Eastern District of Michigan would present two conflicts: first, the other

21  actions include requests for damages, whereas the instant action seeks only injunctive and

22  declaratory relief; and second, the putative classes in some of the consolidated cases include only

23  minors.[3]  Opp'n at 12–13.  Yet the operative consolidated complaint for the four cases in the

24  Eastern District of Michigan seeks declaratory and injunctive relief, as well as monetary damages.

---

[3] Plaintiffs additionally argue that peculiarities of California and Ninth Circuit law may be significant in the event that Defendant moves to compel arbitration.  Opp'n at 12–13.  However, as the Court explained above, Defendant has not moved to compel arbitration in any of the six pending cases, and the Court need not speculate regarding this hypothetical scenario.

14

1  Consol. Compl. ¶¶ 263–70.  Additionally, the consolidated complaint proposes a subclass of adult

2  citizens of California and a subclass of minor citizens of California.  *Id.* ¶ 131(i)–(j).  Therefore,

3  the Court finds that the litigation in the Eastern District of Michigan is a likely candidate for

4  consolidation with the instant case, and that the above differences cited by Plaintiffs would not

5  cause any conflict with the consolidated action.

6      The Court therefore finds that this factor weighs strongly in favor of transfer.

7      **d.  Court Congestion**

8      Courts evaluate congestion by comparing the median time to disposition or to trial in the

9  two fora.  *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *11 (N.D. Cal.

10  Dec. 9, 2014).  Plaintiffs contend that a transfer to the Eastern District of Michigan would place

11  this case in a more congested district, because the median time for a civil case to reach trial in that

12  district is 29.1 months, as opposed to 22.8 months in the Northern District of California.  Opp'n at

13  15–16.  Defendant, relying on the same statistics, counters that the two districts have nearly

14  equivalent median times to disposition: 8.7 months in the Northern District of California and 8.6

15  months in the Eastern District of Michigan.  Reply at 10.  The Court is unable to draw any

16  meaningful distinction between the two fora based on these numbers.  *Compare Roling* 756 F.

17  Supp. 2d at 1187 (finding no significant difference between 6.4 months to disposition and 9.4

18  months to disposition) *with Arreola*, 2014 WL 6982571, at *11 (holding that, taken together, a

19  2.6-month shorter average time to disposition and a 9.7-month shorter average time to trial tipped

20  slightly in favor of transfer).  Accordingly, the Court finds the congestion factor to be neutral.

21      **3.  Balancing the Factors**

22      The Court finds that Defendant has met its burden to justify transfer to the Eastern District

23  of Michigan.  Although the Plaintiffs' choice of forum and the local interest in the litigation weigh

24  slightly against transfer, the Court finds that the judicial economy and convenience of the parties

25  in transferring this action to the same district as the pending, consolidated class action weighs

26  heavily in favor of transfer.  These factors are entitled to the greatest weight, for the "central

27  purpose" of the court's inquiry "is to ensure that the trial is convenient."  *Piper Aircraft*, 454 U.S.

28

*United States District Court*
*Northern District of California*

15

at 256.

## IV.      CONCLUSION

For the foregoing reasons, the Motion to Transfer is GRANTED. The Clerk shall TRANSFER the above-captioned case to the United States District Court for the Eastern District of Michigan.

**IT IS SO ORDERED.**

Dated: June 26, 2020

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

16

Case No. 19-CV-05933-LHK
ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE